Good morning. May it please the Court, I'm Linda Ziskin, attorney for the plaintiff-appellant Randall Heide. I would like to reserve two minutes for rebuttal, if I may. One of Mr. Heide's doctors summed up this case the best. He said, we either believe him or we send him out for a psychiatric consult. And that's what this case is about. It's about a very unlikable fellow who has a whole constellation of incredible symptoms and problems. Do you believe him? Possibly, because there is some objective medical evidence that he does have some real problems. But he's also been diagnosed with a somatoform disorder. And this goes a long way toward explaining all of the inconsistencies in his presentation and all the exaggeration, all the pain behavior and all the other things that Mr. Heide does that render him less incredible. And this somatoform disorder was diagnosed by several examining psychologists. The ALJ found it to be a severe impairment, so the diagnosis itself is not an issue here. He has it. He has a somatoform disorder and it is severe. Now, normally when you see an ALJ make a finding that an impairment is severe, you're going to hope to see a limitation based on that in the residual functional capacity or RFC analysis, and you'll hope to see something presented to the VE. We don't see that here. What we do see is a limitation to simple, repetitive, routine work. This is probably based on the assessment by Dorothy Anderson, who is one of the DDS, Disability Determination Services, reviewing psychologists. She doesn't examine, but she reviews the entire record and she renders an opinion. That's her job. The ALJ did accept her opinion. He cites her approvingly. He ---- Which doctor was this? I'm sorry, Your Honor. Which doctor was this? This is Dr. Dorothy Anderson, Ph.D., who is a psychologist for DDS. So she's a non-examiner, but her job is to review the record. ALJ Teelins commented on this. He said, I'm going to accept ---- well, he didn't say I'm going to accept, but he accepted her opinion because, and I quote, of her psychological expertise or expertise as a psychologist and because of her review of the entire objective medical record. Well, here's the problem. She assessed a moderate limitation in concentration, persistence and pace. And then we see that limitation to simple routine repetitive work. I have no problem with that. I think the ALJ did that right. Here's where he failed to properly consider Dr. Anderson's opinion. She assessed a whole laundry list of moderate impairments. There's six of them. And they include things that really will have a vocational impact. Mr. Heide, according to Dr. Anderson, has a moderate limitation in the ability to maintain concentration and attention for extended periods. Okay. That one we have. However, he has a moderate limitation in his ability to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances. And here's the big one. He has a moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Why did ALJ Tielens leave all this out? This is good stuff. It should have been presented to the V.E. Did the ALJ express their discredit to Dr. Anderson in any way?  He liked her. He commented on her psychological expertise and the fact that she reviewed the entire objective record. And normally we argue that DDS doctors are outweighed by the treating doctors, you know, per Hollihan and per Lester. In this case, though, and there is a CFR, and I don't have it at my fingertips, but the opinions of the DDS doctors do constitute substantial evidence when it's backed up and consistent with the rest of the medical evidence. Here it is. And that's what ALJ Tielens found. He liked the fact that she reviewed the entire medical record. Well, then why leave all this out? Why just have that one limitation? So the point is here. Well, the reason I don't know the reason. Okay. But one possible explanation is the person who was doing it was summarizing Dr. Anderson, you mean? Yes. Well, actually, Your Honor, what she does is she's a well-qualified doctor, and she's making her assessment. I'm not trying to limit what she's doing, but you're wondering why he didn't talk about it. He didn't have to talk about it if he had the records before, and then he did. He did, but here's my problem with it. He accepts part of it and then omits to mention the rest of it. Now, Reddick P. Chater tells us that the ALJ has to look at all the evidence, including the stuff that weighs against his theory of non-disability. He didn't do that with Dr. Anderson. It wasn't just a summary that she prepares. DDS doctors actually render opinions. And based on her understanding of this medical record, she assessed these limitations, which, if presented to the vocational expert, the V.E., would likely result in an opinion by the V.E. that this person could not sustain competitive employment 8 hours a day, 5 days a week, because that's what it is. So what do you want us to do? You want us to send it back and say pass this by somebody? Well, that's one remedy, and I would not be unhappy with that. But what I'm going to ask you to do is actually to pay benefits. And here's the reason. See, I thought you were going to ask this. Yeah. And how on this record can an appellate court order the payment of remedy unless it ignores the appellate function? Well, you are to review this de novo, Stone v. Heckler. Right. All right? So let's look at this de novo. Here's the problem that the ALJ has. The ALJ didn't tell the V.E. everything. And that's reversible error for further vocational proceedings per Embry v. Bowen. But Harmon, Biafel, and Smolin, and Beneke v. Barnhart tell us that when the record is complete, there's no likely utility in sending this back yet again for more administrative proceedings. The remedy is to find him disabled and award benefits. So I believe that's what we have. Well, an appellate court should know better than the vocational expert what jobs a person can perform. That's right. But here's the catch. There is testimony in the record from her, from the V.E., that with a two-day absence from work per month, any claimant is unemployable. There are no jobs that this person can do. That is in the record here. I can't remember if it was the ALJ or the counsel at the hearing who asked that excellent question. So now let's go back and look at these. The reason I've been sort of mystified by this argument is that it doesn't match what I remember about the briefs. So I've been sitting here going through the briefs, and it doesn't match what I'm And on the notion that there was something that she said that was left out of the RFC and the hypothetical. Okay. I'm having a little trouble hearing you, but I think the argument you're making now is not one that I'm finding, that I remember from the briefs or that I'm finding now that I'm leafing through the briefs. Okay. Let me refer you to the exact pages then. The laundry list of impairments is found at the excerpts of record page 76. I'm sorry, excerpts of record page 640. But I'm asking where this argument. The argument concentrating on Dr. Anderson, her assessment, and the impact on the hypothetical presented at the hearing is made in the briefs. I'm not finding it. Right. It's mostly, it's mentioned slightly in the opening brief, and it's developed further in the reply brief at page 7 of my reply brief. The ALJ's RFC assessment was incomplete. And it's interesting that the Commissioner never specifically responded to that argument. You didn't respond because you didn't make it. That's the thought I'm pointing out. It's a problem, because I didn't think about it either, because it's very hard to find. Well, I believe you're right that I didn't develop it fully in the opening brief, but it is mentioned. The statement of facts does contain, you know, a thorough exposition of her findings. And then in my section in the opening brief on rejection of doctors, it is you don't have Dr. Anderson in there. Well, I can find it for you if I take a second. Maybe you could. Maybe I missed it, but I've been sitting here diligently looking. If I can. I have the same question, by the way. Okay. Let me find it while I'm listening to opposing counsel. All right. And I reserve the remaining time, which is not much. Thank you. Good morning. May it please the Court. Lisa Wolfe on behalf of the Commissioner. I recently put a notice of appearance, and I believe you went into it. I'm sorry, I'm not hearing you. I recently put a notice of appearance representation on behalf of the Commissioner on Monday in this case. This case involves a 2001 application for disability benefits. It has an alleged onset date of 1994. The ALJ's decision was issued in March of 2006. Crucial to this case is credibility of Mr. Heide. Here the ALJ properly discredited Heide's claims based on exaggeration, his work, and his extensive activities of daily living. This determination was supported by substantial evidence. Let me just ask. Dr. Morgan indicated that Heide's descriptions of his symptoms are consistent with multiple chemical sensitivity and that objective tests exist that Heide could not afford. My question is, doesn't this give rise to an ambiguity triggering the ALJ's duty to develop the record? Is that from the new evidence submitted to the Appeals Council, or was that from the evidence? AL996. I believe, Your Honor, that that is new evidence that the ALJ did not consider. Thank you, Your Honor. Subsequent to the ALJ's issuance of his decision denying benefits, that decision issued in March 2006. On May 26th, Plaintiff's Counsel at that time, Kimberly Tucker, submitted a letter from Dr. Morgan, and that's at page, excerpt of the record, 996 through 998, and that was not considered by the ALJ. So that's new evidence and needs to be evaluated under the Ramirez, possibly Harmon, standards for remand. In that evidence, Dr. Morgan took issue with the ALJ's decision. He had the benefit of reading the ALJ's decision, and he, and Plaintiff asserts that that, look at my notes, that that new evidence rebuts the ALJ's decision. Case law tells us that we need to look at Ramirez to see if, to look at this evidence, to see if substantial evidence supported the ALJ's decision. And what is your view on that? Well, the May 2000 report did not change any underlying facts supporting the ALJ's rejection of Dr. Morgan's earlier disability opinion. The ALJ discussed this disability opinion in his decision. The ALJ acknowledged. The ALJ found that Mr. Heide had several physical and mental limitations. One of those was multiple chemical sensitivities. So this was an impairment that the ALJ found severe. And you're saying he already considered it before the new evidence? Well, you know, we need to look at the medical evidence, and we need to look at what the work limitations are established by the evidence. And in the residual functional capacity that the ALJ crafted based on the medical evidence that he found credible, he limited Mr. Heide, and that's an excerpt from Record 12, without even moderate exposure to fumes, gases, et cetera, because of the multiple chemical sensitivity. So he found that impairment severe, and he issued and crafted a residual functional capacity based on that. This feeds into the credibility argument. Mr. Heide, the credibility is so crucial here. The ALJ discounted many of Mr. Heide's subjective allegations based on the lack of credibility. He exaggerated his symptoms. There's symptom magnification. That's an excerpt from Record 455, 581, and 1035. He has extensive activities of daily living. He went on a two-year road trip, almost 6,000 miles. He was walking up to four miles a day. After an accident, he was only able to walk two miles a day. He worked out daily. And this is the result of the report. I'm not sure if you can see, but there was some indication in the record, and I don't have an excerpt from Record, that he did some golf and yoga despite shoulder impairments. Thank you for that. For really the first time this morning, I'm recognizing that they're making a claim about Dr. Dorothea, or Dorothea Anderson. Right. And as I was listening to counsel, and I did notice that Dr. Anderson's materials in the reply brief, and since it wasn't a reply brief, I, of course, did not have an opportunity to respond to that. But the ALJ, Judge Teelins, did discuss Dr. Anderson's findings, and these are findings from 2003, and she's a DDS consultant. That means she reviews the entire medical record. She looks at what's before her as of 2003. And she, you know, writes down diagnoses and limits. She assesses limitations. Under Social Security Ruling 96-6P, the ALJ must look at those. They must look at what DDS has to say. He's not bound by their findings. Here, could the ALJ have done a better job? I briefly looked at Judge Teelins' decision. He discussed the DDS findings. He accepted Dr. Anderson's diagnoses, one of which was somatoform disorder. He noted that she had moderate impairments in concentration, persistence, and pace. And when he crafted a residual functional capacity finding, he limited her to simple repetitive work inter alia. As you note on the exhibit, Exhibit Record 12, the RFC in here is rather extensive, more extensive than we see in a lot of cases. So he looked at all the medical evidence here, and he limited her to simple and repetitive work, presumably in response to that. But I gather, moving aside the question of whether the issue is properly before us, that Dr. Anderson also, well, I don't know this. I only know what the brief says. But the brief says that Dr. Anderson also said that he had difficulties in maintaining, moderate difficulties in maintaining a schedule, maintaining regular attendance, and being punctual within customary tolerances, and completing a normal work day and work week without interruptions from psychologically based symptoms, and also to perform at a consistent pace. Now, did she say those things? I believe when the record, she completed a checklist, and there were other moderate limitations. Why isn't that a problem? Because they're moderate? Well, under SSR 966P, which is, you know, this was not briefed, but under 966P, which is a ruling that, you know, that the ALJs must look at, and it's part of their legal framework when they look at cases and evaluate it. They must look at, and I'm not quoting from the SSR. I'm sure the law clerks will do an excellent job for you. But the ALJ must look at this evidence. He's not bound by it, and he needs to discuss it. He could have, and I think I started, I prefaced my comments with, he could have done a better job. He mentioned some of the evidence there. Well, are you saying that he rejected it, or are you saying that he, even if he accepted it, he didn't need to include it? And if he did reject it, doesn't he need to explain that? If he's not, I understand he's not bound by it, but does he need to deal with it? If he's taking part of what she said, but not the other part? He accepted the diagnoses. He could have done a better job explaining why he didn't accept all, or accept or reject all of the modern limitations. So what you're saying is that if he accepted it, he would have had to include some of it in the hypothetical, so we therefore have to assume that he rejected it. Yes. But he didn't explain why he rejected it. Not with great specificity, that's correct. Well, not with any specificity. Zero specificity. Right. The latter portion, just the concentration, persistence, and pace. Has this, to your knowledge, ever been raised, aside from the briefs, was it raised in the district court? I have to say that I'm somewhat new to this case, but I believe that counsel did mention it somewhere in the briefing, because I remember looking at the evidence, because I examined the excerpt of record based upon citations. So in all candor, I believe that it's somewhere in her briefings. Do you have any further questions? There's many other issues. There's semi-skilled. I'm sure my time is up. There's a lay witness issue, but I gather that your position is that under Valentine there was a mistake, but it was harmless. Right. I filed a 28-J earlier, and the commissioner concedes that under Bruce, two of the reasons cited by the ALJ were an error, but under Valentine the lay witness testimony from the mother, it was his written testimony, that it conflicted with Mr. Heide's extensive activities of daily living, which is connected to the credibility issue here, and that that was a valid finding, the same evidence finding under Valentine. So he got one out of three right. Well, you know, there's also the secondary gain issue, and Bruce, there's a slight subtlety difference. I think I'd stand by the ALJ's secondary gain analysis. In Bruce, the spouse, Mrs. Bruce, applied for disability benefits, and the fact that she had a, I believe it was a pending application, was one of the factors that the ALJ used in Bruce to reject her credibility. This is a slightly, there's subtle differences here. In this case, Mrs. Heide, the mother, testified that the family had very tight finances. She mentioned she was on Social Security, but that her son, Mr. Heide, lived with her and that there were tight finances, and that's at 251 and 260 in the excerpts of reference. So there's a difference between, in Bruce, where it was the fact that she had a pending application versus here, a possible secondary gain allegation. Thank you very much. Thank you. I'll give you exactly one minute. One minute. I greatly appreciate that. Let me quickly go through a couple of points here. In answer to the question of where is this in the opening brief, actually, I'm going to apologize to the Court for not fully developing that argument. At page 33 of my opening brief is where I give all the factual information about Dr. Dorothy Anderson, but I did not go back to that issue in my argument having to do with either RFC or rejection of doctors. So what I will ask, I did fully develop it in my reply brief, which is probably where my colleague has seen it. I will ask the Court to forgive this omission and look at this case under a de novo standard and to properly consider this evidence. I would greatly appreciate that. Secondly, it sounds like opposing counsel conceded remand, talking about Harmon and Ramirez, in regard to the letter from Dr. Morgan that was submitted to the appeals counsel. The district court flatly found, with absolutely no rationale for this Court to review, that the appeals counsel considered it. There is no evidence to suggest that the appeals counsel considered it. Under Harmon, 1178 and 1180, the pages of that case, which I did not submit to you, but that is where the remand standard is discussed. And then Ramirez. Thank you very much. Thank you, counsel. The case of Heidi v. Astro is submitted. The next case in the calendar, Lightner v. Astro, is submitted on the briefs. The following case, Wilson-Soles v. Curtis, is also submitted on the briefs. So we are coming to Schultz v. Astro.
judges: Farris, Nelson D. W., Berzon